

# SUPREME COURT OF MISSOURI
## en banc

IN THE INTEREST OF S.C.,      )
     )
    Appellant,      )
     )
     )
v.      )     No. SC95049
     )
JUVENILE OFFICER,      )
     )
    Respondent,      )
     )
and      )
     )
MISSOURI ATTORNEY GENERAL,      )
     )
    Intervenor.      )

**APPEAL FROM THE CIRCUIT COURT OF SAINT LOUIS CITY**
The Honorable David C. Mason, Judge

*Opinion issued November 10, 2015*

S.C., a juvenile, challenges the disposition entered for his conviction of first-degree attempted rape, sections 564.011 and 566.030.1, RSMo Supp. 2013.[1] S.C. asserts that ordering him to register as a sexual offender for his lifetime, pursuant to sections 211.425 and 589.400.1(6), violates his constitutional rights. This Court has exclusive

---

[1] All further statutory references are to RSMo Supp. 2013.

jurisdiction pursuant to article V, section 3, of the Missouri Constitution because S.C. challenges the constitutional validity of a Missouri statute.

This Court holds that S.C.'s challenge to the enforcement of section 589.400.1(6), which was not made part of the judgment against S.C., is not ripe for review at this time. While the lack of justiciablity does not implicate the merits of S.C.'s claims, it does preclude relief in this action. Accordingly, pursuant to Rule 84.14, this Court will issue the ruling that the trial court should have entered. S.C.'s claims are dismissed without prejudice.

*Factual and Procedural Background*

In March 2014, S.C. was dropped off at Victim's residence. Victim, aged 41, was S.C.'s adoptive sister. Victim testified that S.C., while younger than her, was taller and heavier than she.

Inside the residence, S.C. approached Victim as she sat on an ottoman, put his hands around her throat, and started to choke her. Victim questioned S.C. regarding his actions, and S.C. commanded her to get up. S.C. tried to pull Victim up, but Victim ended up kneeling on the floor.

S.C. moved Victim around the room. S.C. tried to lock the front door. At one point Victim was able to escape S.C.'s hold on her, and Victim attempted to make it to her bedroom, where she kept a gun. S.C. caught Victim again and threw all of his weight against her. S.C. demanded she get on the bed, but Victim resisted.

Victim abandoned her idea of retrieving her gun and instead managed to get to the kitchen. S.C. cornered her there. S.C. told Victim to pull her pants down. Victim

refused and pleaded with him to not do anything to her. Victim convinced S.C. to move to the living room, where she hoped someone would see her through the open window and help her.

In the living room, S.C. bent Victim over a dining room chair. S.C. pulled down Victim's pants and underwear, put his penis on the small of her back, and "humped" her. Victim thought he was trying to rape her.

When S.C. finished, Victim escaped, shoeless and in her pajamas, to a neighbor's home. The police were called. Victim was transported to the hospital, where she underwent tests and a sexual assault examination, and was treated. The examination verified the presence of seminal fluid from swabs of Victim's lower back, underwear, and vaginal areas. Further, the DNA testing was found to be consistent with S.C.'s DNA.

S.C. was charged pursuant to section 211.071, and the juvenile court held a hearing to determine whether to certify S.C. as an adult. Following that hearing, the juvenile court declined certification and set the matter for juvenile adjudication. Further, the trial court held a competency hearing and determined S.C. possessed the capacity to understand the proceedings against him and to assist in his own defense.

S.C. then filed a motion in the juvenile court, requesting it to declare Missouri's Sex Offender Registration Act and the federal Sex Offender Registration and Notification Act unconstitutional. The juvenile court took the motion under advisement and proceeded to the adjudication hearing. At the conclusion of the adjudication hearing, the juvenile court found S.C. guilty of one count of first-degree attempted rape.

3

Subsequently, the juvenile court held a dispositional hearing. S.C. inquired about the status of his motion regarding the constitutional validity of the juvenile and adult sex offender registries, and the juvenile court indicated that the matter was under consideration. After receiving evidence in the dispositional hearing, the juvenile court entered its order and judgment of disposition. The order and judgment of disposition is a form with a series of boxes with descriptions that the juvenile court may check. Here, the juvenile court checked the box placing S.C. in the care, custody, and control of the Division of Youth Services. The juvenile court checked another box, which further ordered that S.C. "comply with all requirements of sex offender registration pursuant to Section 211.425 [], including: registering on the juvenile sex offender registry …." The juvenile court did not check the box that indicated S.C. was required to register on the adult sex offender registry.

S.C. now brings this appeal. S.C. does not challenge any provision of the juvenile court's judgment. Rather, S.C. contends that requiring certain juveniles to register under the adult sexual offender registry is unconstitutional.

*Justiciability*

Prior to addressing the merits of S.C.'s asserted constitutional challenges, this Court must determine whether S.C. presents a justiciable controversy. "A justiciable controversy exists where the plaintiff has a legally protectable interest at stake, a substantial controversy exists between parties with genuinely adverse interests, and that controversy is ripe for judicial determination." *Missouri Health Care Ass'n v. Attorney*

4

*General of the State of Mo.*, 953 S.W.2d 617, 620 (Mo. banc 1997) (citing *State ex rel. Chilcutt v. Thatch*, 221 S.W.2d 172, 176 (Mo. banc 1949)).

"The first two elements of justiciability are encompassed jointly by the concept of 'standing.'" *Schweich v. Nixon*, 408 S.W.3d 769, 774 (Mo. banc 2013). Standing is a prerequisite to a court's authority to address substantive issues. *Id.* at 779 n.5. If there is no standing, "the court shall dismiss the action." Rule 55.27(g)(3); *see also Farmer v. Kinder*, 89 S.W.3d 447, 451 (Mo. banc 2002). Standing is a question of law, which is reviewed *de novo*. *CACH, LLC v. Askew*, 358 S.W.3d 58, 61 (Mo. banc 2012). Standing cannot be waived. *Id.*

Even if a party is able to demonstrate standing, the merits of the case will not be reached unless the issues are ripe. *Schweich*, 408 S.W.3d at 774. "Ripeness is determined by whether 'the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character." *Id.* (quoting *Missouri Health*, 953 S.W.2d at 621). "Ripeness does not exist when the question rests solely on a probability that an event will occur." *Buechner v. Bond*, 650 S.W.2d 611, 614 (Mo. banc 1983) (citing *Lake Carriers Ass'n v. MacMullan*, 406 U.S. 498, 506, 92 S. Ct. 1749, 1755, 32 L.Ed.2d 257 (1972)).

"In the context of a constitutional challenge to a statute, a ripe controversy generally exists when the state attempts to enforce the statute." *Missouri Alliance for Retired Americans v. Dep't of Labor and Indus. Relations*, 277 S.W.3d 670, 677 (Mo. banc 2009) (quoting *Missouri Health*, 953 S.W.2d at 621). Yet, there are some situations

5

in which a ripe controversy may exist prior to the statute being enforced. *Missouri Health*, 953 S.W.2d at 621. Pre-enforcement of a constitutional challenge to a law is ripe when "the facts necessary to adjudicate the underlying claims were fully developed and the law at issue were affecting the plaintiff in a manner that gave rise to an immediate, concrete dispute." *Id.*; *see also Planned Parenthood of Kansas v. Nixon*, 220 S.W.3d 732, 739 (Mo. banc 2007).

Here, S.C.'s pre-enforcement challenge to the requirement that he must register on the adult sex offender registry list for life is premature. The judgment from which S.C. appeals does not order him to register as a sexual offender for his lifetime. Further, while the juvenile court potentially could have ordered him to register on the adult sexual offender registry, it did not do so. The juvenile court only ordered that S.C. register on the juvenile sexual offender registry; there was no lifetime registration requirement. S.C. is not required at this time to register for his lifetime on a sexual offender registry, he is a juvenile, and there has been no attempt to compel him to register on the adult sexual offender registry, there is no immediate, concrete dispute at this time. *Westphal v. Lake Lotawana Ass'n, Inc.*, 95 S.W.3d 144, 151 (Mo. App. W.D. 2003); *see also Forrest v. State*, 290 S.W.3d 704, 718 (Mo. banc 2009) (finding a defendant's claim that the lethal-injection protocol was unconstitutional to not be ripe because it was uncertain what method would be used to execute him in the future, and the defendant's claim that the clemency procedure was arbitrary and capricious was not ripe because he had not yet sought clemency). Hence, S.C.'s claim is not ripe for review.

6

*Conclusion*

S.C.'s challenge to a lifetime requirement to register on the sex offender registry does not give rise to a justiciable controversy. While the lack of justiciability in this appeal does not implicate the merits of S.C.'s claims, it does preclude relief in this action at this time. Accordingly, pursuant to Rule 84.14, this Court will issue the ruling that the trial court should have entered. S.C.'s claims are dismissed without prejudice.

_____
GEORGE W. DRAPER III, JUDGE

All concur.

7